SOVEREIGN CAMP, WOODMEN OF THE WORLD, *v.* HARRIS.

4-4926

Opinion delivered March 14, 1938.

*Hill, Fitzhugh & Brizzolara,* for appellant.
*Warner & Warner,* for appellee.

DONHAM, J.   On June 18, 1929, appellant issued to William P. Harris, deceased, its certificate for $2,000 in which appellee was named as beneficiary.   It is provided that the nonforfeiture values set forth in said policy shall be computed as if the certificate had been issued on June 1, 1927.   The policy provided for the payment of monthly installments or premiums in the sum of $5.68 each.

Appellant agreed that upon receipt of satisfactory proof of death of the said William P. Harris, while in good standing, it would pay to his wife, appellee here, the sum of $2,000.   The certificate contained certain special provisions or options whereby appellant agreed to pay the insured, under the conditions specified, the cash surrender value according to paragraph 2, page 2, or advance automatic premium loans as set forth in paragraph 3, page 2, or grant paid-up or extended insurance in accordance with paragraph 2, page 2.   It was provided

that after 36 monthly payments had been made, if the insured failed to pay any subsequent monthly payment he could select one of the nonforfeiture options set forth in paragraph 2, page 2, provided, within three months after the due date of the monthly payment he made written application therefor and surrendered the certificate. Deceased paid all monthly installments until April, 1934; and he did not apply for any one of the nonforfeiture options set forth in said paragraph 2, relative to the cash surrender, loan value, or paid-up and extended insurance. Therefore, these provisions of the policy are not material here.

Paragraph 3, page 2, of the policy relates to "automatic premium loans." This paragraph provides that after 36 monthly payments had been made, upon the failure to pay any subsequent monthly payment, the association would, without any action on the part of the member, advance as a loan to said member the amount of the monthly payments required to maintain his certificate in force from month to month until such time as the accumulated loans, together with compound interest thereon at the rate of 5 per cent. per annum, and any other indebtedness to the association, equal the cash value of the policy at the date of default in payment of the monthly payments. Said paragraph further provided that when said cash value had been consumed in loans advanced and interest thereon, then the certificate should become null and void; provided, that while the certificate was in force and effect under this provision the member could resume payment of monthly payments without furnishing evidence of insurability. The said paragraph further provided that such accumulated loans and interest thereon should become a lien upon the certificate, and should continue to bear interest at the same rate. It was provided that the member might pay in whole or in part at any time the amount of the lien; but, if not paid, the loan and accumulated interest thereon should be deducted upon any settlement with the member, or from the amount payable at the death of the member.

On February 20, 1934, deceased obtained a loan from appellant for $114.80. By the terms of the policy, this loan was payable at any time. The rate of interest was 5 per cent. The deceased died December 13, 1936. Proof of death was duly made by letter dated January 14, 1937. Upon receipt of said letter, the appellant denied liability, notifying appellee that the decedent had defaulted in his payments of premiums May 1, 1934; that the amount of the cash value of his policy at that time was $233.12; and that when the amount of the loan, less $4.39 as a credit upon said loan, was taken from the amount of the cash surrender value, there was left $122.71 which had been applied under the automatic installment loan provision contained in the policy and monthly interest on said loan, the monthly installment rate being $5.68, and the interest on the loan being 46c per month, or a total of $6.14 per month. It was claimed by appellant that the cash value of the policy was sufficient to keep the policy in force and effect for only nineteen months; and, hence, the premiums were only paid up to and including October, 1935. It was stated that deceased had all of the month of November to make the November payment; and since it was not made he became automatically suspended December 1, 1935, by reason of failure to pay the November installment.

Thus, it will be seen that the appellant contended that it was not liable, on the ground that deceased defaulted in payments May 1, 1934, and after deducting from the cash value of the policy, as of that date, the unpaid loan, a balance of $122.71 remained, which was applied under the automatic premium loan clause; that this amount only continued the certificate in force to and including October, 1935; and that the deceased was suspended December 1, 1935, for failure to pay the November installment, at which time the policy became null and void.

The appellant contends that under the terms of the policy the payment of the premiums under the automatic premium loan clause did not increase the cash value of the policy as provided by Table "A" thereof, so as to

keep the policy in effect to the date of the death of the insured. On the other hand, appellee contends that the cash value of the policy was increased by payments from the automatic loan fund the same as if the premiums had been kept paid from any other source; and that the policy did not lapse, but was in force and effect at the death of the deceased.

The same question was before this court in the case of *W. O. W.* v. *Easley,* 188 Ark. 1012, 69 S. W. 2d 273. This court held in said case that the advancement of the premiums by appellant from the automatic premium loan fund enhanced the cash value of the policy so as to keep it in force. The court further held, under provisions of the policy exactly like those in the instant case, when said provisions were all construed together, that the advancement of the premiums from the automatic premium loan fund increased the cash value of the policy, and that the insured was entitled to the benefit of this increase so as to prevent a forfeiture of the policy. It is conceded by learned counsel for appellant that in this respect the Easley case was exactly like the instant case. It is conceded by counsel that if the cash value of the policy was increased by payment of the premium loans from the automatic premium loan fund the same as if the premiums had been paid from some other source the cash value of the policy was sufficient at the time of the death of the deceased to have kept said policy in force and effect. Therefore, unless the court recedes from the position taken in the Easley case, it must affirm the judgment in the instant case, unless on some other ground it should be reversed.

The only other ground that appellant urges for reversal is that the deceased acquiesced in appellant's construction of the policy. On March 18, 1935, appellant notified the deceased of his note for the loan he had obtained, and of the interest due thereon. Upon receipt of that notice, the insured wrote appellant: "I was under the impression that this policy had been dropped for some time. I am sending you reminder certificate that I received. Will you please write me the details as to the matter?"

Appellant replied, telling the deceased that he defaulted in payment of the April, 1934, installment and had paid no installments since said date; that the cash value of his policy would continue the policy in force up to and including October, 1935; that after the October installment had been advanced under the automatic premium loan provision, the entire values to the credit of his certificate would be exhausted; and that if he intended to keep his policy in effect that he should resume payments of the premiums with the November, 1935, installment. There was no further correspondence or communication between the deceased and appellant relative to the policy. Appellant contends that this is such acquiescence on the part of the deceased that the beneficiary in the policy should not now be permitted to contend that the policy was in force and effect at the death of the deceased, December 13, 1936. We do not adopt this view. The information given the deceased in reply to his request was directly contrary to the holding of this court in the Easley case; and, therefore, contrary to the law of this state. It may be that deceased, upon receipt of appellant's letter, learned, in some manner, that appellant was in error, and, therefore, that a reply was not necessary. We hold, under the circumstances, that there was no such duty on the part of the insured to make reply as would estop the beneficiary named in the policy from maintaining an action thereon after his death.

The trial court found that there was $1,757.68 due appellee, and rendered judgment for this amount, with interest at the rate of 6 per cent. per annum from the date of the judgment. This was the amount of the policy, with interest, less the amount of the loans properly chargeable against it. We find that this amount is correct. No error appearing in the record, the judgment is affirmed.